UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO. 07-61171-CIV-MARRA/JOHNSON

MIYOUNG SON and YOUNGKEUN SON,

     Plaintiffs,

v.

KERZNER INTERNATIONAL RESORTS,
INC., *et al.*,

     Defendants.
_____/

**<u>OPINION AND ORDER ON MOTION TO DISMISS</u>**

THIS CAUSE comes before the Court on Defendants Kerzner International Resorts, Inc.,

Kerzner International North America, Inc., Kerzner International Limited, Kerzner International

Bahamas Limited, Island Hotel Company Limited, and Paradise Island Limited's Motion to

Dismiss Plaintiffs' Complaint (DE 15), filed November 12, 2007.  The motion is now fully

briefed and is ripe for review.  The Court held an evidentiary hearing on this matter on June 19,

2008.  The Court has carefully considered the motion and the record and is otherwise fully

advised in the premises.

**<u>Background</u>**

On August 17, 2007, Plaintiffs Miyoung Son ("Mrs. Son") and Youngkeun Son ("Mr.

Son") ( together, "Plaintiffs") filed a four-count Complaint (DE 1) against Defendants Kerzner

International Resorts, Inc., Kerzner International North America, Inc., Kerzner International

Limited, Kerzner International Bahamas Limited, Island Hotel Company Limited, Paradise Island

1

Limited,[1] Nassau Cruses, Limited ("Nassau Cruses"), Robert Brown, Rodger Munroe, and Silvin Brown (together, "Defendants"), asserting claims of negligence and loss of consortium against all Defendants.  The facts, as alleged in the Complaint and adduced at the evidentiary hearing, are as follows: Mr. and Mrs. Son, residents of Maryland, purchased a vacation package from the Kerzner Defendants for a four-night stay at the Atlantis Resort in the Commonwealth of the Bahamas in July 2005.  (Compl. ¶¶ 3, 15.)  The vacation was to last from August 17 to August 21, 2005.  Plaintiffs were to be accompanied by their two children, Mrs. Son's sister and brother-in-law, their three children, and a nanny.  (Compl. ¶ 15.)  While in the Bahamas, Plaintiffs booked an excursion through Atlantis's Tour and Excursions Center.  (Compl. ¶ 17.)  While on the excursion, Mrs. Son received severe and extensive injuries as a result of being pulled through the churning propellers of the excursion boat.  (Compl. ¶¶ 20-21.)

Findings of Fact

1.  After booking the trip, Plaintiffs received from the Kerzner Defendants a package in the mail containing information about the trip; however, the package did not contain any mention that Plaintiffs would be expected to sign a forum selection clause or choice of law clause upon check-in at the Atlantis Resort.  (Pl. Ex. 1; Def. Ex. 5.)

2.  On July 24, Mrs. Son received two e-mails from the Kerzner Defendants with additional information about her upcoming trip – one regarding her booking, and one regarding her sister's family's booking.  (Pl. Ex. 3,4; Def. Ex. 3, 4.)

---

[1] The Court will refer to the moving parties, Kerzner International Resorts, Inc., Kerzner International North America, Inc., Kerzner International Limited, Kerzner International Bahamas Limited, Island Hotel Company Limited, and Paradise Island Limited, collectively as the "Kerzner Defendants."

3.  Mrs. Son testified that she did not open the e-mails prior to departing for the Bahamas

because she did not recognize the sender.  Mrs. Son also testified that she did not open the e-

mails and read the attached documents until very recently, but she admitted that she did receive

the e-mails prior to her trip.

4.  One of the documents contained in each e-mail that Mrs. Son received after making the

booking stated as follows:

> During guest registration at Atlantis, Paradise Island you will be asked to
> sign a form agreeing to the following terms related to any claims you may
> have as a result of your stay at the resort: I agree that any claim I may have
> against Atlantis, Ocean Club, or any of their officers, directors, employees
> or related or affiliated companies, including, without limitation, Kerzner
> International Limited, Kerzner International Bahamas Limited, Island
> Hotel Company Limited, Paradise Enterprises Limited, Paradise Island
> Limited and Paradise Beach Inn Limited resulting from any events
> occurring in The Bahamas shall be governed by and construed in
> accordance with the laws of the Commonwealth of The Bahamas, and
> further, irrevocably agree to the Supreme Court of The Bahamas as the
> exclusive venue for any such proceedings whatsoever.  The foregoing shall
> apply to all persons accompanying me, and I represent that I have the
> authority to sign this document on their behalf.

(Pl. Ex. 3,4; Def. Ex. 3, 4.)

5.  Mrs. Son testified that she did not know she would have to sign such a document upon arrival.

6.  Upon arrival, Mr. Son completed the check-in process.  (Pl. Ex. 2; Def. Ex. 1.)  Mr. Son

signed a form on his own behalf "and the members of [his] family group or others listed below"

(including Mrs. Son) which contained the following language:

> I agree that any claims I may have against the Resort Parties resulting from
> any events occurring in The Bahamas shall be governed by and construed
> in accordance with the laws of the Commonwealth of The Bahamas, and
> further, irrevocably agree to the Supreme Court of the Bahamas as the
> exclusive venue for any such proceedings whatsoever.

(Pl. Ex. 2; Def. Ex. 1.)  Mr. Son stated that the check-in process lasted approximately two to

3

three minutes, that he was asked to sign several forms, and that he did not read the forms.  Mr. Son said that the resort's front desk staff did not explain the contents of the forms.  Mr. Son further stated that he did not intend to sign a forum selection clause, nor was he authorized to sign one on his wife's behalf.  However, Mr. Son did not state that his wife had affirmatively told him not to sign any documents regarding her legal rights.

7.  Mrs. Son testified that she did not authorize her husband to sign a forum selection clause, but Mrs. Son also did not state that she told her husband he was not to sign any legal documents on her behalf.  Mrs. Son testified that she did authorize her husband to complete all necessary check in procedures on her behalf.

8.  Plaintiffs previously visited the Atlantis Resort in December 2001.  When completing check-in formalities in 2001, Mr. Son signed a form that states as follows:

> I agree that any claim I may have against Atlantis, Ocean Club, or any of their officers, directors, employees or related or affiliated companies, including, without limitation, Sun International Hotels Limited, Sun International Bahamas Limited, Island Hotel Company Limited, Paradise Enterprises Limited, Paradise Island Limited and Paradise Beach Inn Limited resulting from any events occurring in The Bahamas shall be governed by and construed in accordance with the laws of the Commonwealth of The Bahamas, and further, irrevocably agree to the Supreme Court of The Bahamas as the exclusive venue for any such proceedings whatsoever.  The foregoing shall apply to all persons accompanying me and I represent that I have the authority to sign this document on their behalf.

(DE 54.)

## Standard of Review

In the Eleventh Circuit, a motion to dismiss on the basis of a forum selection clause is brought pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure as a motion to dismiss for improper venue.  *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290 (11th Cir.

1998).  Forum selection clauses are "prima facie valid and should be enforced unless

enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."  *M/S*

*Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972).  The Court may make any findings of

fact necessary to resolve a motion to dismiss for improper venue, so long as the resolution of

factual disputes is not an adjudication on the merits of a case.  *Bryant v. Rich*, - - F.3d - -, Nos.

06-11116 & 06-12290, 2008 WL 2469405 at *5 (11th Cir. June 20, 2008).  Determining the

reasonableness of a forum selection clause is a fact-specific inquiry to be made on a case-by-case

basis.  *Shankles v. Costa Armatori, S.P.A.*, 722 F.2d 861, 864 (1st Cir. 1983).

Because the Court is sitting in diversity, Florida substantive law applies.  *See, e.g.,*

*Admiral Ins. Co. v. Feit Management Co.,* 321 F.3d 1326, 1328 (11th Cir. 2003) ("Sitting in

diversity, we apply the substantive law of the forum state unless federal constitutional or

statutory law compels a contrary result.").

**<u>Discussion</u>**

A forum selection clause will be held "unreasonable" in only four circumstances: 1.)

when the formation of the clause was induced by fraud or overreaching; 2.) when the plaintiff

would be deprived of her day in court because of inconvenience or unfairness; 3.) when the

chosen law would deprive the plaintiff of a remedy, or 4.) when enforcement of the provisions

would contravene public policy.  *Lipcon*, 148 F.3d at 1292; *see also Carnival Cruise Lines, Inc.*

*v. Shute*, 499 U.S. 585, 594-95 (1988). Some courts have also made prior notice of the clause an

element to consider in determining reasonableness.  *See, e.g., Sun Trust Bank v. Sun*

*International Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1258 (S.D. Fla. 2001); *Corna v. American*

*Hawaii Cruises, Inc.*, 794 F. Supp. 1005, 1012 (D. Haw. 1992).[2]  Here, Plaintiffs argue that the

forum selection clause was formed by fraud and overreaching, that Plaintiffs will be deprived of

their day in court if they have to sue in the Bahamas, that Bahamian law is fundamentally unfair,

and that enforcement of the forum selection clause would contravene public policy.  The Court

will address each of these arguments in turn.

Fraud and Overreaching

        Plaintiffs argue that the formation of the agreement including the forum selection

provision was "induced by fraud and overreaching."  (Pl. Resp. 9.)  Plaintiffs claim that they

"never received . . . any notice of a forum selection clause prior to arriving at the hotel in the

Bahamas."  (*Id.*)  Plaintiffs do not argue bad faith on the Kerzner Defendants part, and their sole

argument regarding fraud and overreaching relates to notice.  Plaintiffs also do not argue that the

forum selection clause was hidden on the forms they signed.  Instead, they argue that they did not

receive notice of the clause prior to their arrival in the Bahamas, so they could not cancel "with

impunity."  Further, they argue that the short check-in time period effectively deprived Mr. Son

---

        [2] In *Shute*, the Supreme Court did not state that lack of notice of the forum selection
clause was grounds for finding that the clause was unreasonable.  In fact, the Court stated that it
would not "address the question of whether respondents had sufficient notice of the forum clause
before entering the contract for passage" because the respondents had conceded that they had
sufficient notice.  *Shute*, 499 U.S. at 590.  However, the Supreme Court found notice relevant
insofar as the Court found a party's right to reject the contract "with impunity" essential to its
enforceability.  *Id.* at 595.  Thus, notice is a relevant inquiry when considering a forum selection
clause to determine whether the party could walk away from the contract with a minimal penalty.
In *Corna*, for instance, the Court found that two to three days notice of the forum selection clause
insufficient, because the plaintiffs would have forfeited the entire ticket price for their trip if they
had canceled the trip upon first learning of the forum selection clause.  *Corna*, 794 F. Supp. at
1011-1012; *cf. Elliott v. Carnival Cruise Lines*, 231 F. Supp. 2d 555, 561 (S.D. Tex. 2002)
(enforcing forum selection clause where cancellation at time notice of clause received by
passenger would have resulted in refund of only 50% of purchase price).

of the ability to read and comprehend the rights he was surrendering when he signed the document.  (*See* Pl. Resp. 9-10.)

A non-negotiated contract containing a forum selection clause may be enforceable, so long as the contract was formed under "reasonable" circumstances.  *Shute*, 499 U.S. at 593-94. In particular, the clause must be reasonably communicated to the consumer such that the consumer knows that the contract contains terms and conditions which affect the consumer's legal rights.  *Shankles*, 722 F.2d at 864.

With respect to the time for check-in, a perusal of the "Acknowledgment, Agreement, and Release" form shows that the clause is not hidden in any way.  The page contains seven paragraphs regarding limitations on liability, choice of law, and other legal provisions.  (Pl. Ex. 2; Def. Ex. 1.)  While the forum selection provision is not written in a larger font, in bold font, or italicized, it is still easily readable and is set off in its own paragraph in the middle of the front side of the form.  Further, the form is marked at the very top "READ BEFORE SIGNING." Thus, the Court finds that the form clearly and unmistakably conveys that it contains terms affecting the consumer's legal rights.  The clause is not hidden among other, non-legal provisions, nor is the clause physically disguised.  The fact that Mr. Son chose not to read the form that is clearly marked "read before signing" does not excuse Plaintiffs from their contractual obligation.  *See, e.g., Coleman v. Prudential Bache Securities, Inc.*, 802 F.2d 1350, 1352 (11th Cir. 1986) ("[A]bsent a showing of fraud or mental incompetence, a person who signs a contact cannot avoid her obligations under it by showing that she did not read what she signed.").  The check-in process was doubtless hurried, but the Court finds that Mr. Son was not rushed through the process so as to prevent him from taking as much time as he needed or

desired to review the document thoroughly.  Mr. Son made a conscious choice – he chose to sign the form without reading it in order to speed the check-in process along.  This willful ignorance cannot be used to invalidate an otherwise binding provision.

Plaintiffs then argue that they did not receive notice of the forum selection clause prior to their arrival at the Atlantis resort, such that they could not reject the provision "with impunity." In *Sun Trust Bank*, under similar facts, the court concluded that the same forum selection clause disputed in this case was unenforceable because the plaintiffs did not have an "objectively reasonable opportunity to consider and reject" the clause.  *Sun Trust Bank*, 184 F. Supp. 2d at 1261.  The court was presented with "undisputed" evidence that the "forum-selection clause was presented to [plaintiff] for the first time upon arrival in the Bahamas."  *Id.*

Contrary to Plaintiffs assertions, this case is distinct, and *Sun Trust Bank* is inapplicable. First, Plaintiffs had both visited the Atlantis resort in 2001, and Mr. Son signed a nearly identical forum selection provision upon arriving at the resort in 2001.  Having previously signed a nearly identical forum selection provision in 2001, it is reasonable to expect that Plaintiffs would be asked to sign a similar provision on their return visit.  In *Horberg v. Kerzner Resorts International Ltd.*, No. 07-20250-CIV-UNGARO, slip op. at 5-6 (S.D. Fla. Aug. 6, 2007), the court enforced the same forum selection clause disputed in this case on the basis that the plaintiffs had visited the Atlantis resort on previous occasions and thus "had a reasonable opportunity to consider and reject the forum selection clause."

Also making this case distinct from *Sun Trust Bank* is the fact that the Kerzner Defendants provided Plaintiffs with prior notice that they would be asked to sign a form requiring all suits brought against the Kerzner Defendants be brought in the Bahamas.  Plaintiffs

concede that Mrs. Son received two e-mails on July 24, 2005, that contained an attachment titled "Terms and Conditions." (Pl. Ex. 4, 5.) In the section labeled "Atlantis Registration," the attachment explained that all guests would be asked to sign a forum selection clause upon check-in.

Mrs. Son testified that she did not remember receiving these e-mails from the Kerzner Defendants, and Mrs. Son also testified that she did not open e-mails from unrecognized senders because of the threat of computer viruses. Mrs. Son further testified that she did not expect to receive e-mails regarding her Atlantis resort trip. However, Mrs. Son received these e-mails the very same day that she booked her trip, and both e-mails had "Travel Plan" in the subject line with a reservation number. Logic would dictate that Mrs. Son must have provided her e-mail address over the phone when making the reservation since she received e-mails regarding her booking shortly thereafter. Thus, while the Court finds Mrs. Son's testimony credible, the Court does not agree that her decision not to read the e-mails was reasonable.[3] Mrs. Son chose not to read the e-mails, but the e-mails provided sufficient notice of the forum selection and choice of

---

[3] At the hearing, Plaintiffs' counsel consistently averred that Plaintiffs did not have a "duty" to open the e-mails they received regarding their trip but that Plaintiff had a "duty" to open packages sent to her through the U.S. Mail. However, the Court fails to see how Plaintiffs make this distinction. Plaintiffs have not identified a specific duty that Plaintiffs might have had to open regular mail versus e-mail. Plaintiffs' could have decided not to open the package received through the U.S. Mail as freely as they decided not to open the e-mails. The Court cannot conceive of a "duty" to open a letter any more than it can conceive of a "duty" to open an e-mail. Plaintiffs' bear the risk that they will lose valuable information or documentation when they choose not to receive a letter, e-mail, or any other form of communication. Plaintiffs weighed the risk of losing vital information against the risk of receiving a computer virus when deciding not to open the e-mails, just as Plaintiffs weighed the risk of losing vital information against the risk of receiving anthrax powder when deciding to open the mailed package. The Kerzner Defendants' should not be held liable because Plaintiffs' risk calculus led them not to open the documentation.

law clauses her family would be required to sign upon arrival at the Atlantis Resort.

Finally, Plaintiffs argued at the hearing that Mrs. Son did not sign the forum selection clause, nor did she grant her husband authority to sign away her legal rights. Thus, Plaintiffs claim, the forum selection clause could not apply to Mrs. Son. The Court disagrees. First, Mrs. Son admitted that she granted her husband authority to complete all procedures necessary to check-in to the Atlantis Resort. Thus, Mr. Son had "implied authority" to sign the forum selection clause on Mrs. Son's behalf, because it was necessary for Mr. Son to sign the clause to complete check-in.[4] Alternatively, by signing the form which clearly stated he had the authority to bind everyone in his party, Mr. Son acted with "apparent authority," because the Atlantis Resort reasonably believed his representations that he had the authority to bind Mrs. Son.[5]

Moreover, a party need not sign a forum selection clause to be bound by the terms of the

---

[4] The Restatement (Third) of Agency defines "implied authority" as either (1) the authority "to do what is necessary, usual, and proper to accomplish or perform an agent's express responsibilities or (2) to act in a manner which an agent believes the principal wishes the agent to act based on the agent's reasonable interpretation of the principal's manifestation in light of the principal's objectives and other facts known to the agent." Restatement (Third) of Agency § 2.01 cmnt. b (2006).

[5] "Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has the authority to act on behalf of the princpal and that belief is traceable to the principal's manifestations." Restatement (Third) of Agency § 2.03.

The parties did not brief the issue of agency, but the parties proceeded to argue the issue of agency at the hearing. In Florida, the rule of *lex loci contractus* determines the law to be applied when determining an issue of contract law. *See Sturiano v. Brooks*, 523 So. 2d 1126 (Fla. 1988). Because the contract was executed in the Bahamas, Bahamian law would apply to whether Mr. Son was acting as Mrs. Son's agent and whether she was bound by Mr. Son's signature. The parties, however, have not provided any evidence of (nor can the Court determine on its own initiative) the scope of Bahamian agency law. The Court has turned to the Restatement (Third) of Agency as a general guideline, not as an authoritative source on the law of the Commonwealth of the Bahamas.

10

clause; a party can be bound if it is "closely related" to the dispute.  *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209-10 (7th Cir. 1993); *see also E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediaries, S.A.S.*, 269 F.3d 187, 195 (3d Cir. 2001); *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988).  Mrs. Son is at the center of this dispute (indeed, the parties are arguing over who is responsible for her injuries) and is thus "closely related."  Therefore, she can be bound to the terms of the clause whether she actually signed it or not.  Again, the Court has explained that she received all the notice to which she was entitled under the law, and she should have been aware that agreeing to a forum selection clause was part of the check-in process.

In sum, the Kerzner Defendants' burden in this situation was only to provide reasonable notice to Plaintiffs, which the Kerzner Defendants achieved.  Once the Kerzner Defendants sent Plaintiffs notice of the forum selection clause, it was Plaintiffs' decision as to whether they read the notification.  The Court rejects Plaintiffs' argument that Defendants somehow needed to do more.  Plaintiffs chose not to read the notice, and the consequences are theirs to bear.  Thus, the forum selection clause will not be invalidated on this ground.

Deprivation of Day in Court and Fundamental Unfairness

Plaintiffs argue that they will be "effectively deprived of their day in court" because of the "inconvenience" of litigating in the Bahamas and because of the fundamental unfairness of Bahamian law.  (Pl. Resp. 10.)  First, Plaintiffs claim that Mrs. Son cannot return to the Bahamas because of the "great mental and emotional anguish" she would suffer if she was forced to return there.  Mrs. Son testified that she did not want to return to the Bahamas; however, she admitted that her doctors have never stated that she is physically or mentally incapable of returning.

11

Instead, her prohibition on travel to the Bahamas appears self-imposed and, as a result, not a persuasive justification to invalidate the forum selection clause.

Likewise, Plaintiffs claim they are "financially unable to pursue litigation in the Bahamas, where contingent fees are prohibited." (Pl. Resp. 11.)  This argument is also unavailing.  The Court cannot give substantial weight to fact that contingency fee arrangements are not available in foreign forums.  *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1430 (11th Cir. 1996).  As the Fifth Circuit Court of Appeals has stated, "If the lack of a contingent-fee system were held determinative, then a case could almost never be dismissed because contingency fees are not allowed in most foreign forums."  *Coakes v. Arabian American Oil Co.*, 831 F.2d 572, 576 (5th Cir. 1987) (discussing contingency fee arrangements as part of *forum non conveniens* analysis).

Public Policy

Plaintiffs argue that "enforcement of the provisions of the Release would contravene a strong public policy, because enforcement of the forum selection clause would imply enforcement of the entire Release." (Pl. Resp. 11.)  Plaintiffs, however, have provided no cases to suggest that enforcement of the forum selection clause by this Court would compel a Bahamian court to enforce the release of liability.  The Court thus finds this argument lacks merit.

Discouraging Legitimate Claims

Finally, Plaintiffs argue that Defendants "set the Bahamas as the forum 'as a means of discouraging [hotel guests] from pursuing legitimate claims.'" (Pl. Resp. 12.)  Plaintiffs point to a case in which the Kerzner Defendants chose to litigate in New Jersey state court, *Paradise Enterprises Ltd. v. Sapir*, 811 A.2d 516 (N.J. Super. Ct. 2002), to show that the Kerzner

Defendants can indeed litigate in U.S. forums. Plaintiffs claim that the fact that the Kerzner Defendants will litigate in New Jersey when they so choose shows bad faith selecting the Bahamas to litigate these claims. The Court also finds this argument unpersuasive. As the Supreme Court held in *Shute*, where the defendant selected a Florida forum, "[a]ny suggestion of such a bad-faith motive is belied by two facts: Petitioner has its principal place of business in Florida, and many of its cruises depart from and return to Florida ports." Here, the Kerzner Defendants, who run a resort in the Bahamas, elected a Bahamian forum to litigate disputes arising out of visitors to the Bahamian resort who are injured while staying in the Bahamas. Had Defendants selected a trial court in Thailand to settle tort claims arising out of resort stays in the Bahamas, one could make a colorable argument that the selected forum was unrelated to the dispute and selected to discourage individuals from bringing legitimate claims. Where the defendant operates a business in the selected forum and the actions that would give rise to litigation would also occur in the selected forum, the Court cannot conclude that the defendant acted in bad faith.

Accordingly, the Court finds that the forum selection clause is enforceable, and this case shall be dismissed subject to Plaintiff's ability to refile the action in the Supreme Court of the Bahamas.

**Forum Non Conveniens**

Alternatively, the Court believes that this action should be dismissed on the basis of the doctrine of *forum non conveniens*. The federal doctrine of *forum non conveniens* allows the Court to use its inherent power to dismiss an action because of the inconvenience of the plaintiff's chosen forum. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506-07 (1947). Under the

doctrine, dismissal is "appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft v. Reyno*, 454 U.S. 235, 249 (1981).

Analytically, the Court's analysis falls into three stages.  First, the Court must consider whether an "adequate alternative forum" exists which has jurisdiction over the case. *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983).  The Court must then consider whether private interest factors suggest that the Court should disturb the strong presumption in favor of a plaintiff's choice of forum. *Id.*  If the Court finds that the private interest factors are indeterminate, the Court must then proceed to consider whether considerations of public interest favor a trial in the foreign forum. *Id.*  Dismissal is only warranted if these factors weigh heavily towards trial in the foreign forum. *Piper Aircraft*, 454 U.S. at 249.  This strong presumption in favor of the plaintiff's choice of forum is strongest when the plaintiff is a citizen or resident of the U.S. *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1102 (11th Cir. 2004).

Adequate Alternative Forum

An adequate alternative forum exists when the defendant is "amenable to process" in the foreign forum. *Piper Aircraft*, 454 U.S. at 254 n.22.  The defendant bears the burden of establishing that its proposed forum is adequate and has jurisdiction over the case. *La Seguridad*, 707 F.2d at 1307.  Here, all but two of the Defendants in this action are Bahamian citizens or corporations.  (Compl. ¶¶ 4-14.)  Defendants claim that they are "undoubtedly amenable to service of process in the Bahamas." (Def. Mot. 15.)  Likewise, Defendants have presented

evidence that the Bahamian legal system recognizes negligence actions like Plaintiffs' claims in the instant case.  (Pyfrom Aff. ¶ 10.)  Thus, there is no indication that Bahamian courts would not afford Plaintiffs a remedy for their claims.  Moreover, courts are loathe to hold that other forums are inadequate.  *See Leon v. Million Air, Inc.*, 251 F.3d 1305, 1312 (11th Cir. 2001).  Plaintiffs have not intimated that Bahamian courts would be inadequate.  Thus, the Court finds that the Supreme Court of the Bahamas is an adequate alternative forum for the instant action.

<u>Private Interest Factors</u>

The Supreme Court has directed district courts to consider the "private interest of the litigant."  *Gulf Oil*, 330 U.S. at 508.  Factors considered to be in a litigant's private interest include the ease of access to sources of proof, availability of compulsory process for witnesses, cost of obtaining attendance of witnesses, ability to view the premises (if necessary), and "all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Id.*

The Kerzner Defendants argue that "all of the documents related to Plaintiffs' allegations in the Complaint are in The Bahamas."  (Def. Mot. 16.)  The Kerzner Defendants do not state what documents are in the Bahamas, nor do they argue that such documents could not be brought to Florida in the event that trial was conducted here.  Plaintiffs, meanwhile, have noted that they are already in possession of police and medical records from the Bahamas (*see* Childs Aff.), and such documents could easily be disclosed to Defendants during discovery.  This factor weighs in Plaintiffs' favor.

Notwithstanding the relative ease of access to documentary evidence, the ease of access to witnesses and the ability to compel attendance at trial is not as clear.  Plaintiffs have only identified one Florida citizen witness – the corporate representative of Defendant Kerzner

International Resorts, Inc.  The remaining witnesses Plaintiffs seek to call are largely medical professionals from Maryland or Washington, D.C.  (*See* Pl. Resp. 14-16.)  Defendants, on the contrary, note that many prospective witnesses are located in the Bahamas: the staff at Doctors Hospital in Nassau, Bahamas, who initially treated Mrs. Son; representatives of Defendant Nassau Cruises, Ltd.; Defendants Robert Brown, Rodger Munroe, and Silvin Brown; as well as employees of the Atlantis Resort.  (Def. Mot. 16.)

The Court recognizes that in *Ward v. Kerzner International Hotels Ltd.*, Judge Jordan held that the fact that several witnesses resided in the Bahamas was insufficient to overcome the strong presumption in favor of the plaintiff.  No. 03-23087-CIV, 2005 WL 2456191 at *3 (S.D. Fla. Mar. 30, 2005).  In that case, like in *Sun Trust Bank*, a majority of the Bahamian witnesses were employees of the defendants who, defendants claimed, would appear voluntarily.  *Id.*; *see also Sun Trust Bank*, 184 F. Supp. 2d at 1263-64.  In *Ward*, only two Bahamian witnesses were not employed by the defendants.  *Ward*, 2005 WL 2456191 at *3.  By contrast, in this case, most of the relevant witnesses are not employees of the Kerzner Defendants.  Some of the prospective witnesses are Defendants in this action, but this Court cannot effectively subpoena these foreign nationals residing in the Bahamas and compel them to appear before this Court.  In fact, these Bahamian witnesses are the very witnesses that will describe the events leading to Mrs. Son's injuries (i.e., the liability phase).  The U.S. witnesses, who for the most part are medical professionals, will likely be used for the damages phase of trial.  Looking at the quality of the proposed witnesses, rather than absolute numbers of potential witnesses, the Court finds that none of the most vital witnesses needed to resolve the issue of liability reside in Florida, and a substantial number of these witnesses reside in the Bahamas.

The Kerzner Defendants may be able to interview agents of Nassau Cruses, Ltd., or some of the other individual Defendants, but the Kerzner Defendants would be forced to present testimony at trial in Florida in the form of depositions or letters rogatory.  Were this situation limited to a pair of witnesses whose testimony was not in controversy (as in *Ward*), the Kerzner Defendants would be expected to proceed using these devices.  Where several of the Defendants are outside of the compulsory process of this Court and where those witnesses are the Kerzner Defendants' main witnesses to challenge Plaintiffs' claims of liability, as in this case, the Court believes that the Kerzner Defendants would be severely prejudiced in their ability to defend their case.  As the Supreme Court explained in *Gulf Oil*, the doctrine of *forum non conveniens* should be applied to avoid these situations: "Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants."  330 U.S. at 511.

Moreover, Plaintiffs' have not identified a single witness who would be available to testify if trial were held in Florida but would not be available to testify at trial in the Bahamas.  As all but one of Plaintiffs' witnesses are coming from locations outside of this district, all but one will have to travel.  The Court believes that it would be equally feasible for Plaintiffs to arrange plane tickets and hotel stays in Nassau, Bahamas, as it would in West Palm Beach, Florida.  These cities are roughly 200 miles apart, a relatively short distance considering that Plaintiffs will have to travel roughly 1,000 miles to reach either forum.  While there may be some inconvenience for the one Florida witness to travel to the Bahamas, Plaintiffs cannot realistically contend that the inconvenience of traveling to Nassau would vary significantly from the inconvenience of traveling to West Palm Beach.  *See Wiwa v. Royal Dutch Petroleum Co.*, 226

17

F.3d 88, 107 (2d Cir. 2000) ("For any nonparty witnesses, the inconvenience of a trial in New York is not significantly more pronounced than the inconvenience of a trial in England.").

Finally, it has been widely recognized that the inability to implead other parties directly involved in a controversy is a factor weighing heavily against the plaintiff's choice of forum. *See, e.g., Reid-Walen v.* Hansen, 933 F.2d 1390, 1398 (8th Cir. 1991); *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 453 (2d Cir. 1975). In this case, like in *Piper Aircraft*, the joinder of Nassau Cruises, Ltd., Robert Brown, Rodger Munroe, and Silvin Brown is "crucial to the presentation" of the Kerzner Defendants' case. 454 U.S. at 259. Plaintiffs want to show that Nassau Cruises and these individuals are the agents of the Kerzner Defendants and that the Kerzner Defendants are vicariously liable for her injuries. Without the ability to join this corporation and these individuals meaningfully to this case, the Kerzner Defendants would be forced to defend claims of vicarious liability with limited benefit of evidence from the persons actually involved in the incident giving rise to the claim. The Court finds this burden to be substantial.[6] Conversely, the Court can find no substantial burden on Plaintiffs (other than a financial burden from Plaintiffs' inability to retain counsel on a contingency fee basis) from having to litigate their dispute in the Bahamas.

After considering the private interest factors, the Court finds that they weigh substantially against Plaintiffs' selection of the Southern District of Florida as their forum. The Court will

---

[6] Unlike all of the cases involving injuries at resorts cited by Plaintiffs, this case is distinct because it involves an injury allegedly caused by third parties. In every other case, the plaintiff alleged that the resort was directly liable for negligence. Here, Plaintiffs do not argue direct negligence by the Kerzner Defendants, and the Kerzner Defendants can only defend their own case by compelling the attendance of the alleged direct tortfeasors. While these tortfeasors are nominally part of this lawsuit and have been served, their appearance in Court cannot be guaranteed.

now consider the public interest factors.

Public Interest Factors

      In *Gulf Oil*, the Supreme Court described the considerations of public interest that district courts should consider on a motion to dismiss for *forum non conveniens*:

> Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin.  Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.  In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only.  There is a local interest in having localized controversies decided at home.  There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Gulf Oil*, 330 U.S. at 508-09.  Additionally, the Court must weigh the interest of the United States in providing a U.S. forum for its citizens with the interest of the Bahamas in adjudicating a dispute that occurred in its territory.  *See SME Racks*, 382 F.3d at 1104.

      While the Court begins with the proposition that Plaintiffs (both U.S. citizens) should not be ousted from a U.S. forum, the Court finds that the public interest factors also weigh heavily in favor of trial in the Bahamas.  First, in *SME Racks*, the court made clear that the "United States has a strong interest in providing a forum for its citizens' grievances against an allegedly predatory foreign business that actively solicited business and caused harm *within the home forum*."  382 F.3d at 1104 (emphasis added).  In *SME Racks*, a U.S. plaintiff brought an action against a Spanish company for breach of contract and various torts in Florida.  *Id.* at 1099.  The contract was negotiated and executed in Spain, but the alleged breach and torts allegedly occurred in Florida as the plaintiff claimed it received a shipment of defective goods in Florida.

*Id.* This case is distinguishable from *SME Racks*, because the "harm" did not occur in Florida (or even in the U.S.). Instead, Plaintiffs are suing (with one exception) Bahamian companies and individuals for conduct which occurred entirely within the Bahamas. Unlike *SME Racks*, the presumption in favor of Plaintiffs' choice of forum here is not as strong because of the attenuated connection of this forum with the events giving rise to the claims. *See, e.g., J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co., Ltd.*, 515 F. Supp. 2d 1258, 1274 (M.D. Fla. 2007); *see also Iragorri v. United Technologies Corp.*, 274 F.3d 65, 73 (2d Cir. 2001) (*en banc*) (holding that a U.S. plaintiff's choice of forum is not automatically granted greater deference unless the choice was motivated by "legitimate reasons").

The parties have not addressed any administrative difficulties with pursuing this case in the Bahamas, other than the fact that contingency fee agreements for Plaintiffs' counsel are not permitted in the Bahamas.[7] This factor, as the Court has already explained, receives no consideration. The Court also agrees with Plaintiffs that a view of the site of Mrs. Son's accident is meaningless because the "shifting sands are no longer as they were at the time of the accident." (Pl. Resp. 14.) The remaining factors, nonetheless, weigh heavily for the Kerzner Defendants.

A jury composed of residents of Palm Beach County, Florida, has a minimal (if any) interest in adjudicating a dispute between citizens of Maryland and (with one exception) citizens of the Bahamas for acts that occurred in the Bahamas. As explained in *Gulf Oil*, the people of Florida have no relation to this case, and thus they should not bear the burden of serving on a jury

---

[7]The Court notes the logic of *Chierchia v. Treasure Cay Services*, 738 F. Supp. 1386 (S.D. Fla. 1990), where Judge King held that "a forum in which the personal injury action arose would present a better administrative choice than one which experiences one of the busiest criminal dockets in the U.S." *Id.* at 1389.

to settle a dispute between Maryland residents and Bahamian corporations for activities in

Bahamian territory.  In contrast, the Bahamas has an interest in settling a dispute between its

citizens and foreigners for activity that happened within its sovereign territory.  The

Commonwealth of the Bahamas has the strongest interest in protecting tourists and visitors from

the conduct of its own citizens.  *See, e.g., Calvo v. Sol Melia, S.A.*, 761 So. 2d 461, 464 (Fla.

Dist. Ct. App. 2000).  While the State of Florida has an interest in protecting its citizens,

Plaintiffs (as well as countless other visitors to the Atlantis resort) are not citizens of Florida and

they have not presented a persuasive argument for needing the protection of Florida's laws.[8]

Plus, Bahamian law will most likely govern this dispute.[9]  While this Court is capable of

applying Bahamian law, and the Bahamas is a common law country much like our own, the

Court would be forced to rely on expert testimony and evidence provided by the parties as to the

substance of Bahamian law, which would add substantially to the administrative burden of

having trial in this forum.  "The public interest factors point towards dismissal where the court

would be required to 'untangle problems in conflict of laws, and in law foreign to itself.'" *Piper*

---

[8]An argument could be made that the United States has an interest in protecting its
citizens from harm abroad.  Nevertheless, the Court feels that the interests of the Bahamas are
stronger, because the events giving rise to the cause of action occurred in the Bahamas and
because Defendants are Bahamian nationals.  Further, Plaintiffs traveled to the Bahamas on their
own volition and only after the fact seek the protection of U.S. courts.

[9]In Florida, courts apply the "significant relationship test" to determine the substantive
law applied to personal injury actions.  *Bishop v. Florida Specialty Paint Co.*, 389 So.2d 999,
1001 (Fla. 1980).  While not dispositive, the law of the state where both the injury and the
conduct causing the injury occurred is, in most instances, the law to be applied.  *Id.*  Since Mrs.
Son's accident occurred in the Bahamas, the Court finds it likely that Bahamian law will apply, at
least in part, to this dispute.  Notably, none of the other factors Florida courts consider
(residence, nationality or place of incorporation of the parties and the place where the
relationship between the parties is centered) indicate that Florida law should apply.  Again, these
factors would suggest either Bahamian law or Maryland law should be applied.

*Aircraft*, 454 U.S. at 251 (quoting *Gulf Oil*, 330 U.S. at 509).

Accordingly, the Court finds that the public interest factors also weigh in favor of dismissal of this action.

<u>Reinstatement of Suit</u>

The Court must ultimately determine whether Plaintiffs can reinstate their lawsuit in the alternative forum without undue prejudice or inconvenience. *See Leon*, 251 F.3d at 1310-11. As the Court has already explained, the inconvenience of traveling from Maryland to West Palm Beach, Florida, is no greater than the inconvenience of traveling from Maryland to Nassau, Bahamas. The distance between these locations is practically the same. In addition, Plaintiffs will not be prejudiced by dismissal, as Defendants are all subject to the jurisdiction of Bahamian courts. (Def. Mot. 19.) The statute of limitations will expire in August 2008, but Defendants have agreed to waive any statute of limitations defenses they might have under Bahamian law. (*Id.* at 19 n.12.) The Court, therefore, dismisses this action subject to these representations.

**Conclusion**

It is hereby **ORDERED AND ADJUDGED** that the Kerzner Defendants' Motion to Dismiss (DE 15) is **GRANTED IN PART** as follows:

1. The Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is **DENIED**. (*See* DE 31.)

2. The Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(3) is **GRANTED**.

3. The Motion to Dismiss on the basis of the doctrine of *forum non conveniens* is **GRANTED**.

4. The Kerzner Defendants are deemed to have waived any statute of limitations and personal jurisdiction defenses they might otherwise raise in the Supreme Court of the Bahamas.

5. This case is **DISMISSED WITHOUT PREJUDICE** for Plaintiff to refile in the Supreme

Court of the Bahamas.

      **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 5th day of September, 2008.

                                                                                         _____

                                                                               KENNETH A. MARRA
                                                            United States District Judge

Copies furnished to:
all counsel of record